UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

HENRY WILLIAMS, ET AL.                          CIVIL ACTION

VERSUS                                          NO. 05-1180

FOX MCKEITHEN, ET AL.                           SECTION "A"(4)


                          **ORDER AND REASONS**

    Plaintiffs are 7 African-Americans who reside in Jefferson Parish and seek to challenge the at-large method of electing judges to the Fifth Circuit Court of Appeal, First District.  On June 27, 2005, Plaintiffs filed a motion to enjoin the primary and general Fifth Circuit elections which are scheduled for October 15th and November 12, 2005, respectively, including the August 10-12, 2005, qualifying period.  Plaintiffs noticed their motion for hearing on July 13, 2005, and Defendants obtained an unopposed continuance in order to allow them sufficient time to respond.  The Court set a hearing date of August 4, 2005, which was then reset to August 5, 2005, at the unopposed request of counsel for Plaintiffs.  On August 5, 2005, a hearing was held in open court and the Court denied Plaintiff's request for a preliminary injunction.  These Reasons provide the Court's rationale for denying the preliminary injunction.

                          **Factual Background**

     This is a "vote dilution" claim brought pursuant to § 2 of the Voting Rights Act of 1965.  Plaintiffs are African American voters who reside in Jefferson Parish and seek to challenge the at-large method of electing judges to the Fifth Circuit Court of

Appeal, First District.  They contend that the at-large method of electing judges to the Fifth Circuit impermissibly diminishes the voting strength of African Americans in Jefferson Parish.  This is an action for declaratory and injunctive relief only.  Money damages are not at issue as all defendants are sued in their official capacities.  Plaintiffs do however request attorney's fees and costs if they ultimately prevail in this litigation.

The Louisiana Fifth Circuit Court of Appeal was established by the Louisiana Legislature in 1981.  The court currently consists of 8 judges elected from 3 districts.  District 1 is composed entirely of Jefferson Parish which elects 6 of the judges at-large.[1]  On March 11, 2005, Judge Sol Gothard resigned from the court and Governor Blanco scheduled a special election to fill the vacancy.  Qualifying is set for August 10-12, 2005, and the primary and general elections are scheduled for October 15th and November 12, 2005, respectively.  Plaintiffs argue that unless the election is enjoined they will be prevented from participating meaningfully in the selection of judges to the Fifth Circuit Court of Appeal.  Plaintiffs point out that no African American has ever been elected to the Fifth Circuit, albeit none has ever sought election to that court, and no black candidate has ever been elected parish-wide when opposed by a white candidate.

By seeking a preliminary injunction Plaintiffs are seeking to preserve the status quo because they cannot litigate this case

---

[1] St. Charles, St. James, and St. John the Baptist Parishes elect the remaining two judges.

to its conclusion prior to the August qualifying dates or the fall elections. If Plaintiffs ultimately win this lawsuit on the merits they seek 1) an order declaring that the at-large method of electing judges in Jefferson Parish violates § 2 of the Voting Rights Act, an order permanently enjoining the at-large method of electing judges to the Fifth Circuit in Jefferson Parish, and an order dividing the 1st District into 6 single member districts including one majority-minority district.

### Motion for Preliminary Injunction

In order to obtain a preliminary injunction Plaintiffs must demonstrate 1) a substantial likelihood of success on the merits, 2) a substantial threat that Plaintiffs will suffer irreparable injury if the injunction is not granted, 3) threatened injury to Plaintiffs that outweighs the threatened harm the injunction may do to defendant, and 4) that the preliminary injunction will serve the public interest. Chisom v. Roemer, 853 F.2d 1186, 1188 (5th Cir. 1988) (citing Canal Authority v. Callaway, 489 F.2d 567, 572 (5th Cir. 1974)). Failure to establish anyone of the four requirements mandates denial of the injunction.

Plaintiffs have challenged the election under § 2 of the Voting Rights Act of 1965, as amended in 1982.[2] To prevail on a

---

[2] Section 2 of the Voting Rights Act is codified at 42 U.S.C. 1973 and provides:

> (a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the

claim of vote dilution under § 2, Plaintiffs must first meet certain threshold requirements promulgated by the Supreme Court in Thornburg v. Gingles, 478 U.S. 30 (1986).  Westwego Citizens for Better Gov't v. City of Westwego, 946 F.2d 1109, 1116 (5th Cir. 1991).  The Gingles threshold factors are 1) that the minority group is sufficiently large and geographically compact to constitute a majority in a single-member district, 2) that the minority group is politically cohesive, and 3) that the white majority votes sufficiently as a bloc to cause it to usually defeat the minority's preferred candidate.  Westwego Citizens for Better Gov't, 946 F.2d at 1116 (citing Gingles, 106 S. Ct. at 2766-67).  If plaintiffs make these threshold showings, the question then becomes whether under the totality of the circumstances plaintiffs have demonstrated a violation of § 2, i.e., that the political process they are challenging is not

---

    guarantees set forth in section 1973b(f)(2) of this title, as provided in subsection (b) of this section.

    (b) A violation of subsection (a) of this section is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) of this section in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice. The extent to which members of a protected class have been elected to office in the State or political subdivision is one circumstance which may be considered: Provided, That nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population.

42 U.S.C.A. § 1973 (West 2003).

equally open to citizens of all races or colors.  Id. at 1116.

It is widely recognized that multi member districts and at-large voting schemes may operate to minimize or cancel out the voting strength of racial minorities in the voting population, but such schemes are not per se violative of § 2.  Id. at 1120 (citing Gingles, 106 S. Ct. at 2765).  Absent evidence that minorities have been excluded from the political process, "lack of success at the polls" alone is not sufficient to trigger judicial intervention. Id. at 853.  Courts must undertake the additional inquiry into the reasons for, or causes of, the election losses in order to determine whether they were the product of "partisan politics" or "racial vote dilution" ("political defeat" vs. "built-in bias)."  Id. at 854.  Lack of success at the polls, even when coupled with a history of discrimination, is not sufficient in and of itself to prove a § 2 violation.  League of United Latin Am. Citizens v. Clements, (LULAC), 999 F.2d 831, 855 (5th Cir. 1993).

The sole evidence that Plaintiffs submitted in conjunction with their request for a preliminary injunction was the expert report of Dr. Richard Engstrom, a Research Professor of Political Science at the University of New Orleans.  Dr. Engstrom concluded that Jefferson Parish elections reveal a consistent pattern of "polarized voting."  However, Dr. Engstrom did not prepare his report in conjunction with this litigation.  Rather, he prepared the report over two years ago in support of a § 5 claim that was pending in another section of this Court.  Dr. Engstrom prepared this report as an update to the election

analysis that he performed for the Theriot v. Parish of Jefferson, 185 F.3d 477 (5th Cir. 1999), litigation which had been pending in yet another section of this Court.  Because Dr. Engstrom prepared the report in 2003 it contained no analysis of the more recent elections in which Jefferson Parish voters participated, and because it was designed to update the data already provided in Theriot it only analyzed elections spanning a very narrow time frame,[3] to wit, the 1999 gubernatorial race, the 1999 Jefferson Parish Sheriff's race, the 1999 District 3 councilmanic race in Jefferson Parish, and the 1997 and 2001 District 1 Westwego Alderman elections.  As the Court explained at the oral hearing the incumbency of the winning candidates in the 1999 gubernatorial election and the race for sheriff cannot be ignored.  And Westwego is but one small subsection of Jefferson Parish so its voting patterns cannot necessarily be extrapolated parish-wide.[4]

---

[3] The actual Theriot report was not made a part of the record in this case although the Theriot report was included as an exhibit to Dr. Engstrom's report as originally filed in 2003.

[4] Dr. Engstrom submitted a rebuttal report after Defendants challenged the scope of Plaintiffs' evidence.  At the oral hearing, the Court granted in part a motion by Defendants to strike those parts of Dr. Engstrom's rebuttal report that constituted mere advocacy or impermissible legal conclusions.  The Court also noted for the record that Defendants' expert had likewise included some objectionable statements in his report.
      Dr. Engstrom was present at the hearing and Plaintiffs lodged a formal objection to the Court's decision to limit the experts to their affidavits and reports rather than permitting live testimony.  The Court concluded that live testimony was not necessary because both experts submitted reports that were well-written and clear *with respect to the areas that they chose to address*.  Even if Dr. Engstrom had been permitted to testify at the hearing the Court would not have allowed Plaintiffs the unfair

Plaintiffs also attempted to demonstrate a substantial likelihood of success on the merits by directing the Court's attention to findings made by other district judges regarding racially polarized voting in Jefferson Parish in prior law suits. In fact, Plaintiffs relied on prior litigation so heavily that shortly before the hearing they filed a motion to have the Court take judicial notice of 40 "facts," many of which are hotly contested in this litigation but which Plaintiffs contend were decided in their favor in prior lawsuits, particularly in the Theriot case. However, the Fifth Circuit's Taylor v. Charter Medical Corp., 162 F.3d 827, 829-30 (5th Cir. 1998), decision forecloses this Court from taking judicial notice of another court's legal determinations. In other words, Plaintiffs cannot meet their burden in this case by pointing to past successes in other litigation. Plaintiffs must submit all of their evidence to this Court so that it can make its own determination on the merits just as the other district courts have done in the cited cases. The Fifth Circuit's affirmance of the district court's findings in Theriot does not create an exception to that principle.

In Chisom v. Roemer, 853 F.2d 1186, 1189 (5th Cir. 1988), the Fifth Circuit cautioned federal courts to "jealously guard and sparingly use [their] awesome powers" to intervene in state

---

advantage of supplementing their motion with new evidence outside the scope of Dr. Engstrom's expert report. Thus, even if Dr. Engstrom had taken the stand his testimony would have been restricted to the opinions and data contained in his expert report.

court elections.  Although some of the concerns that prompted the Fifth Circuit to vacate the preliminary injunction issued by the district court in Chisom were answered later in Miller v. Oubre, 682 So. 2d 231 (La. 1996), that part of Chisom which emphasized the "serious business" involved in enjoining state elections remains sound and in tact.  The admonitions of Chisom are particularly applicable at the preliminary injunction stage when the movers are seeking to hold the political process in abeyance without yet having proven their case via a trial on the merits.

    The Court concludes that the evidence that Plaintiffs have submitted does not entitle them to a preliminary injunction because it does not establish a substantial likelihood of success on the merits.  The most probative evidence of racial polarization is data collected over time and the course of many elections.  Teague, 92 F.3d at 288-89 (quoting Gingles, 478 U.S. at 57).  Just as evidence of "a couple of elections" in which racial polarization is not present will not defeat a claim, evidence of a couple of elections in which racial polarization is present will not necessarily prove a claim.  See id.  In LULAC the Fifth Circuit was adamant in that mere lack of success at the polls will not carry the plaintiff's burden in a § 2 vote dilution claim.  999 F.2d at 855.  Based upon the meager evidence that Plaintiffs submitted via their expert, this Court could not rule in their favor without adopting findings made in prior litigation but to do so would surely be reversible error in light of the Taylor decision, supra.  Plaintiffs might very well prevail on their claims following a trial on the merits but at

this time Plaintiffs are relying far too heavily on the results obtained in other cases, all of which were determined following a full trial on the merits and not on a motion for a preliminary injunction.

Further, assuming that Plaintiffs had demonstrated a substantial likelihood of success on the merits, the Court is not persuaded that Plaintiffs have demonstrated irreparable injury if the injunction does not issue.  Plaintiffs cite district court cases from other jurisdictions where the court concluded that deprivation of voting rights constitutes irreparable injury but the Fifth Circuit has expressly declined to adopt such a per se rule.  Chisom, 853 F.2d at 1188-89.  In Chisom the Fifth Circuit emphasized that the possibility of other corrective relief later in the litigation weighs heavily against a finding of irreparable harm.  Id. at 1189.  Only where the threatened harm would impair the court's ability to grant an effective remedy is there really a need for preliminary relief.  Id.  This Court is convinced that other corrective relief, i.e., a remedy other than completely enjoining the upcoming election, can be confected later in the litigation if Plaintiffs ultimately prevail on their claims.

For the foregoing reasons the motion for a preliminary injunction is DENIED.

New Orleans, Louisiana, August 8, 2005.

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE